## Phillips's Appeal.

1. When jurisdiction rightfully exists in a court of equity it is not in conflict with law or the constitution or the right of trial by jury for the court to appoint a master to report the facts and such a decree as he may deem proper to be made by the court.

2. The court should in such case so regulate the practice as to secure the most accurate and full development of a case in aid of its own functions.

3. The proceeding before a master is not a trial which judicially determines the rights and liabilities of the parties with a bare appeal to the court.

4. The proceeding before a master is to develop the rights and liabilities of the parties for the consideration of the court; the party dissenting bringing the real points of controversy before the court by exceptions.

5. What shall be referred to a master is a matter in the discretion of the court; his province is merely ancillary.

6. The effect of the appointment of a master is to bring into his report the facts and a proper decree, and also his deductions of fact and conclusions of law in order to arrive at a decree.

7. No report is conclusive.

8. The court give great weight to a master's report, because of his superior opportunities of judging of the credibility of witnesses and the effect of their testimony.

9. When the fact is merely a deduction from other facts reported by him, his conclusion is simply a result of reasoning, of which the court is as competent to judge as he.

10. The report of a master is neither a decision nor an infallible guide, but an instrumentality to aid the court in performing its own functions.

11. The principle in Bank *v.* Reese, 2 Casey 143, and Musgrave *v.* Becken-

dorff, 3 P. F. Smith 310, applies only where by refusal to perform the contract, the plaintiff suffers the loss in the advance price of the stock to be conveyed.

March 8th 1871.　Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.　WILLIAMS, J., at Nisi Prius.

Appeal from the Supreme Court at Nisi Prius: In Equity: No. 15, to January Term 1866.

This was a bill, filed October 25th 1865, by Robert L. Brooke and William Barrington against Isaac N. Phillips, Charles M. Phillips, Thomas W. Phillips, John Phillips and the Maple Shade Oil Company. The bill set out an agreement between the plaintiffs, Alexander Richardson and John Richardson, and the Phillipses, defendants, to purchase oil-land in Venango county; each of those persons to be entitled to one-eighth part of the enterprise; that the Phillipses, on behalf of all the parties, purchased of A. G. Egbert an interest in the Hyde and Egbert farm for $205,000; the bill further set out the negotiations of the parties and modifications of their agreement between themselves and their organization of the Maple Shade Oil Company.

In the 5th paragraph it set out:—In the month of February 1864, the Phillipses agreed with complainants to modify the original agreement of January 1864, and to pay to complainants, for effecting a sale of two-thirds of the property sold to the Maple Shade Oil Company, $32,000 of the profits realized from such sale, to be given in stock at subscription prices, if the profits should be in stock, and in money, if the profits should be in money, and also by giving them the 5000 shares of stock over and above the 30,000 shares subscribed, and the 15,000 bonus shares. After the subscription was completed, and before the first instalment was paid, the Phillipses applied to complainants to modify this second agreement, upon the pretence that complainants had failed to procure subscriptions for two-thirds of the property. The Phillipses then proposed to complainants that the share of the profits of complainants should be reduced to one-third of the 5000 shares, being $1666\frac{2}{3}$ shares, and one-sixth of the profits of $95,000, being $15,833.33\frac{1}{3}$ in stock, upon the sale of the property to the Maple Shade Oil Company. The complainants, deceived by the misrepresentations of the Phillipses in regard to the subscriptions to the stock, which were mainly, if not wholly, procured by the complainants, assented to this modification.

Soon after the subscription to the stock was completed, and before the certificates were issued, its price rose considerably above the par value; and the Phillipses claimed the right to pay to complainants the one-sixth of the $95,000 in money in lieu of stock, but the complainants declined the proposition.

The bill averred that large cash dividends on the stock had been received by the Phillipses, which should be paid to the plaintiffs;

that by reason of their acts, the Phillipses were bound to account to the plaintiffs for the stock at the highest market-rate, together with the dividends, their share of the cash and interest. The prayers were for a decree of payment by the Phillipses of the value of the shares, dividends and interest as aforesaid; also for an injunction on the Phillipses restraining them from transferring any of the stock and on the company from paying the Phillipses any more dividends.

The defendants demurred, alleging:—

1. That the plaintiffs had an adequate remedy at law.

2. That they had no lien on the stock, giving them a right to restrain the defendants from selling it, &c. They pleaded suits by the Richardsons pending against them in equity and at law in the Court of Common Pleas of Lawrence county for the same cause of action. The demurrer was overruled and the plea disallowed. The defendants then answered amongst other things, as follows:—

11. " We deny having agreed with the complainants in February 1864 to pay them for effecting a sale of two-thirds of the property sold to the Maple Shade Oil Company, $32,000 of the profits realized from such sale, either in stock or money; or that we agreed to give them 5000 shares of stock and 15,000 bonus shares, as is alleged in the 5th paragraph of the complainants' bill. And we also deny that we applied to the complainants to modify such an agreement; or that we proposed to them that their share of profit should be reduced to one-third of 5000 shares of stock, and one-sixth of the profits of $95,000 in stock, upon the sale of the property to the Maple Shade Oil Company, as is also alleged in the 5th paragraph of the complainants' bill, or anything substantially as therein averred."

They also denied their liability to pay the value of the stock in money or the dividends thereon as averred by the plaintiffs.

A replication was filed and George Bull, Esq., appointed examiner and master. He filed his report as examiner and as master December 15th 1868, by which he found that the plaintiffs were to receive for their services 4041 shares of stock, which not having been delivered to them on demand should be paid for by defendants at the rate of $44 per share, the highest market price since 1864, and also the dividends and interest amounting in the whole to $235,962.24.

On the 27th of April 1869, on the application of the defendants the case was recommitted to Mr. Bull, with directions to open his report and take further evidence, all the plaintiffs and defendants to be examined as witnesses.

The master took the testimony of the parties and other witnesses and reported:—

* * * "As indicated in the original report, there appear to be two questions of fact before the master.

" 1. Whether or not the averment of the plaintiffs' bill, that the transaction out of which this controversy arose, was a joint adventure.

" 2. Whether or not the share of the profits to which the plaintiffs were entitled, was to be all stock, or part stock and part money."

The master then goes on to refer to the findings of his report on the first question and the additional evidence, and says :—

* * * "But the whole effect of the testimony of the parties upon this branch of the case, can be disposed of briefly, by the remark, that they flatly contradict each other. * * *

" Upon the other branch of the case, the same conflict of testimony is found to exist between the plaintiffs and defendants.

" Isaac N. Phillips testified that the modified agreement was made between himself and Robert L. Brooke, and that his brother Thomas W. Phillips was present. That he went to the office of Brooke & Barrington, and called Mr. Brooke out into the hall. A conversation then took place between them, the result of which was, that Mr. Brooke agreed to modify the agreement, as follows: That the plaintiffs should receive $15,833.33 in cash, and 1666 shares of stock. Thomas W. Phillips testifies to the same effect. Mr. Brooke agrees with this statement except as to the nature of the agreement, and swears that the $15,833.33 was to be in stock and not in money. That the proposition made to him in the hall, was 'that unless we would receive the one-sixth of the $95,000, which was the stock profit, and the one-third of 5000 reserved shares, the company could not go through. * * * * * * That they would pay us equitably in proportion to what we had done.'

" The defendants called David Craig, Esq., a member of the Lawrence county bar. * * * The only part of Mr. Craig's deposition that is of any value in this case, is his statement in regard to the injunction suit in Lawrence county, brought by the Richardsons against the Phillipses.

" With the exception of Mr. Craig the defendants offer no evidence other than their own as to this transaction. The plaintiffs recalled John L. Newbold, who testifies that he was interested with Brooke & Barrington in this adventure. He was present in the office of Brooke & Barrington when Mr. Phillips called Mr. Brooke out into the hall. He agrees with the other witnesses, so far as he saw the transaction, and adds, in corroboration of what Mr. Brooke says, that when Mr. Brooke and the two Phillipses returned into the office, the proposed modification as testified to by Mr. Brooke was explained to him in the presence of the parties, and he was asked to give his assent.

" The result of the evidence is simply that the plaintiffs and

defendants agree in their general statements, but when they come to the pinch of the case they disagree. Mr. Newbold reaffirms what he has once before testified to, and gives the details. In doing this he agrees substantially with the statements of the plaintiffs, and contradicts the defendants.

" Hiram Walbridge was also produced and examined by the plaintiffs. His evidence is not very material, with the exception that he contradicts some of the statements made by the defendants, relative to the effort made to sell the property in New York. In considering the effect of this evidence upon the former report, it is only necessary to say that Mr. Walbridge corroborates Mr. Newbold.

" Two of the defendants, Isaac N. Phillips and Thomas W. Phillips, state that the Richardsons got out an injunction against them to prevent any payment to Brooke & Barrington. They give this as a reason why they did not settle the matter with the latter. If this were true it might have an important bearing upon the case. But Mr. Craig, their own witness, states that he was counsel for the Richardsons in the proceeding referred to, and says in answer to a question by the master: 'in the equity suit commenced against the Phillips Brothers, in Lawrence county in 1864, there was no injunction issued.' It also appears by the copy of the record of the equity proceeding in Lawrence county, annexed to defendants' testimony, taken prior to the former report, that no injunction was actually issued. There was nothing done that in any way enjoined or restrained the defendants from coming to a settlement with Brooke & Barrington.

" The result of this additional evidence rather confirms the master in his former conclusion than otherwise, and does not warrant any alteration or modification of his report.

" The time that has elapsed since the first report was filed, makes a new computation of interest necessary, in order to ascertain the amount of the decree to be entered at this time," &c. * * *

The master having made corrections in the computations, reported that there was due, February 22d 1870, from the defendants Phillips to plaintiffs the sum of $246,688.04.

The defendants filed exceptions to both of the master's reports; the exceptions were overruled, the report of the master confirmed March 3d 1870, and the defendants Phillips decreed to pay to the plaintiffs the amount found by the master, with costs.

Phillips appealed to the Supreme Court.

There was a large amount of testimony taken and reported by the examiner, and the master's report was quite extensive.

The main points of contention on the facts of the case were, whether the one-sixth of the profits, $95,000, equal to $15,833.33,

[Phillips's Appeal.]

was payable in stock or cash, and whether the whole stock deliverable to the plaintiffs was to be estimated at its highest market value or at the original price, viz., $10 per share, each subscriber being entitled, under the original arrangement, to receive one share for every two shares paid for by him, which would bring the stock to $6.66 per share.

The decision in the Supreme Court turned very much upon the view there taken of the facts; what is before given, with the facts referred to by Judge Agnew, in his opinion, is deemed sufficient for an intelligible report of the case.

The assignments of error were :—

1. Overruling the defendants' demurrer to the relief prayed for in the bill.

2. Disallowing the defendants' plea of the former and pending suits against them in Lawrence county, for the same cause of action.

3, 4 and 5. Dismissing the defendants' exceptions to both reports and confirming them.

6. The decree of payment.

*W. S. Price, Garfield* (of Ohio), and *Black* (with whom was *Meredith*), for appellants.—The bill demurred to is substantially a declaration upon an alleged contract to deliver stock, and claiming compensation for an alleged breach of such contract, according to the measure of damages given at law.

Under such contract the only claim is by an action of assumpsit or covenant: Weiss v. Mauch Chunk Iron Co., 8 P. F. Smith 295; Musgrave v. Beckendorff, 3 Id. 310; Bank of Montgomery v. Reese, 2 Casey 143. Rendering damages to a party aggrieved is not the province of a court of equity. So, again, there can in such case be no relief in a court of equity: Chinnock v. Sainsbury, 3 L. J. Ch. 409; Middleton v. Magnay, 2 H. & M. 236; Rogers v. Challis, 27 Beav. 175; Snell's Principles of Eq. 475.

According to the averments of the bill, the compensation of the complainants for making the sale was to be a moneyed one, though it is alleged that in a certain contingency it was to be payable in stock: Weiss v. Mauch Chunk Iron Co., *supra.*

The complainants have not shown by their bill that they had any lien upon the stock standing in the name of the Phillipses, or to restrain them in their disposition of it, or to require it to stand as security for the complainants' claim.

Under the prayer for general relief the court will grant such relief only as the case stated in the bill will justify: Story's Eq. Pl., § 42; Del. and Hudson Canal Co. v. Penna. Coal Co., 9 Harris 131; Horton's Appeal, 1 Id. 67.

The suits in Lawrence county are substantially but one suit,

and for the same cause of action, as in this suit; the jurisdiction of that court first attached, and Brooke and Barrington, as well as the Phillipses, are parties there : Cleveland, &c., Railroad Co. *v.* The City of Erie, 2 Grant 212; Id. *v.* Id., 3 Casey 382, 3; Curt. Eq. Precedents 164; Story's Eq. Pl., §§ 735, 747; Welford's Eq. Pl. *309. It contained only one defence: Story's Eq. Pl., § 654.

Where one purchases stock for another, and takes a transfer into his own name, it is sufficient if he always retain so much of the same stock as will enable him to transfer to his principal, on demand, the whole amount purchased for him : Gilpin *v.* Howell, 5 Barr 41.

The compensation is due to Brooke and Barrington and the Richardsons—who should have been made parties to this suit; and it is not ready for final decree till they are brought in.

*E. H. Weil, H. M. Phillips* and *Woodward,* for appellees.— If any part of the bill is good, and entitles the complainant either to relief or discovery, a demurrer to the whole bill cannot be sustained : Livingston *v.* Story, 9 Pet. R. 658.

There is a prayer to the bill for general relief, and the complainant is entitled to any relief which is consistent with the case made in the bill: Bailey *v.* Burton, 8 Wend. 344; Wilkin *v.* Wilkin, 1 Johns. Ch. R. 117; Story's Eq. Pl. 40, 41, and note; Traipe *v.* Gould, 15 Maine 82; Thomason *v.* Smithson, 7 Porter 144; Brown *v.* McDonald, 1 Hill's Ch. R. 302; Allen *v.* Coffman, 1 Bibb 469; 1 Daniel's Ch. Pr. 383, and cases cited; Beaumont *v.* Boultbee, 5 Ves. 485; Palk *v.* Lord Clinton, 12 Id. 63; Read *v.* Cramer, 1 Green Ch. 277; 1 Daniel's Ch. Pr. 387, and note; Bleeker *v.* Bingham, 3 Paige Ch. 246.

The complainants and defendants were jointly interested in the profits of the partnership or adventure, and therefore account render or bill in equity is the proper remedy. A partnership exists when two or more persons combine their property, labor and skill, of one or more of them, in the transaction of business, for their common profit: Parsons on Cont. 124; Ex parte Langdale, 18 Ves. 300; Chapman *v.* Devereaux, 9 Am. L. Reg. 419; Dunham *v.* Rogers, 1 Barr 262; Smith's Leading Cases, 6 Am. ed., vol. 1, part 2, p. 1196, and cases cited; Sims *v.* Willing, 8 S. & R. 103; Tench *v.* Roberts, 6 Mad. 144, n. a; Cheap *v.* Cramond, 4 B. & Ald. 663; Newman *v.* Bean, 1 Foster 93; Loomis *v.* Marshall, 12 Conn. 69; Robbins *v.* Laswell, 27 Illinois 365; Reid *v.* Hollinshead, 4 B. & C. 878; Story on Partnership, § 15; Dob *v.* Halsey, 16 Johns. 34; Ferguson *v.* Alcorn, 1 B. Mon. 160.

The receipt of the complainants' share of the profits, by the

defendants, constitutes a trust cognisable in equity: Seymour v. Freer, 8 Wallace 202; Anderson v. Lernon, 4 Selden 236.

The receipt of the complainants' share of the profits, by the defendants, gave a right to an account, and bill in equity is the proper remedy: Act of 13th October 1840, § 19, Purd. 402, pl. 4, Pamph. L. 7; Finlay v. Stewart, 6 P. F. Smith 191; 2 Tr. & Haly Pr. 163; Steffen v. Hartzell, 5 Whart. 451; Irvine v. Hanlin, 10 S. & R. 221; Bouvier's Law Dict., tit. *Bailiff*; McAdam v. Orr, 4 W. & S. 550; Story on Ag. (2d ed.), § 89; Bissett on Part. 14; James v. Browne, 1 Dall. 340.

It is not sufficient to oust the jurisdiction of a court of equity, that the complainant has a remedy at law unless that remedy be complete and adequate: Skilton v. Webster, Bright R. 203; Yard v. Patton, 1 Harris 282; Seymour v. Freer, 8 Wall. 215; Bank of Kentucky v. Schuylkill Bank, 1 Pars. 220; Kilpatrick v. McDonald, 1 Jones 393; Story's Eq. Jur., §§ 462, 463; Fowle v. Lawrason, 5 Pet. 495; Scott v. Surman, Willes 405.

This bill being for discovery also, it will be made effectual for the purposes of full relief: Story's Eq., § 64; Gloninger v. Hazard, 6 Wright 401; Adley v. The Whitstable Co., 17 Vesey 323; Kyle v. Haggie, 1 Jac. & Walk. 236; McKenzie v. Johnston, 4 Madd. 373; Bank of Ky. v. Schuylkill Bank, 1 Pars. 219; Hare on Discovery 8; Brightly's Eq., §§ 124, 476; Schollenberger's Appeal, 9 Harris 340; McGowin v. Remington, 2 Jones 63; Brooks v. Stolley, 3 McLean 529; Baker v. Biddle, 1 Baldwin 409.

The opinion of the court was delivered, May 8th 1871, by

AGNEW, J.—On the question of jurisdiction of the bill in this case the members of the court are equally divided. Jurisdiction of the case is therefore sustained on this ground. I would dismiss the bill.

Before examining the merits of this case it is proper to notice the practice of proceeding before a master, which has been so vigorously assailed. It is objected that it is contrary to correct equity practice, and inconsistent with the duty of the court and the right of trial by jury to appoint a master to report the facts and such a decree as he may deem proper to be made by the court. But this matter is not well understood by the learned counsel. If there be no chancery jurisdiction over the subject of the bill his animadversions should have been directed against that; as is well shown in the cases of The North Penna. Coal Co. v. Snowden, 6 Wright 488; Norris's Appeal, 14 P. F. Smith 275; Tillmcs v. New York Dyeing and Printing Co., 17 Id. 507. But when the jurisdiction rightfully exists there can be no conflict with the law or the Constitution; for then it is not only the duty but the right of the court so to regulate the practice before it as to secure the

[Phillips's Appeal.]

most accurate and full development of the case in aid of its own functions. Its power is statutory and ample: Act of 16th June 1836, §§ 3, 21, Brightly's Dig. 928, pl. 21, 33. By reason of the large amount of equity business, original and appellate, it has become impossible for this court to examine every case, *ab ovo* and in detail; but we must be brought directly to the points of the contest. This can be done only by a preliminary hearing before a competent master, who can take time to examine the case well, and report upon it intelligently and accurately. The effect of this is to eliminate from the controversy that which is undisputed, and to develop the true points of contest. The error of the learned counsel was in supposing the proceeding before the master is a trial which judicially determined the rights and liabilities of the parties, with a bare appeal to us, when it is but a process to develop them for our consideration; the party dissenting from the master's views bringing the real points of the contest into our view by his exceptions. Our rules, therefore, make provision for the appointment of masters, both general and special, and for their powers and duties: Rules in Equity 62, 64, 65, &c. No rule limits the subject of reference to the master; but what shall be referred to him is a matter in our own discretion; for his province is merely ancillary: 2 Maddock's Ch. 505, 506, 509; 2 Daniel's Ch. Pr., ed. 1865, pp. 1294, 1299, 1301, note 4; 3 Daniel's Ch. Pr. 2197. The effect of an appointment of a master to report the facts and a proper decree is no doubt to bring into the report not only the facts directly proved, but his deductions of fact and conclusions of law, in order to arrive at the decree. But there is no impropriety in this, as it only serves to develop the cause fully, and is not binding on the parties unless approved by us after an examination of the matters in dispute. The conclusiveness of a master's report is sometimes spoken of. But properly speaking no report is conclusive. That would be to make the judgment of an officer performing an ancillary service superior to our own. The weight due to a master's or auditor's report depends on the matter in question. When he reports facts directly proved by the witnesses we are accustomed to give his report great weight, because of his superior opportunities of judging of the credibility of the witnesses and the effect of their testimony. But when the fact is a deduction merely from other facts reported by him, his conclusion is simply a result of reasoning, of which we are as competent to judge as he. Then if we find a master supporting a conclusion by false deductions, or upon erroneous views of the character and weight of the facts actually found, it is not only our right but our duty to correct his error. When in order to arrive at a proper decree he also states his conclusions of law, they are but opinions submitted for our

[Phillips's Appeal.]

adoption, if we think they are founded in reason and law. Hence the report of a master is neither a decision nor an infallible guide, but is a serviceable instrumentality to aid us in performing our own functions. It is obvious, therefore, that in this case the master, under the terms of his reference, could not perform his whole duty without finding the facts in relation to the final contract, deducing his conclusions therefrom, ascertaining the value of the stock, the amount of the dividends received, and pronouncing his conclusions upon the whole case. In doing this he has lightened the labors of the court, and really served the interests of the appellants by stripping the case of unfounded allegations and immaterial facts, and bringing it down to the few terms of the final or modified contract. Upon the testimony of John L. Newbold he found this contract to be, that the plaintiffs for their services in procuring the subscriptions to the Maple Shade Oil Company which they had obtained, were to have the one-sixth part of the profits of $95,000, or $15,833.33⅓ in stock at subscription price, and one-third of 5000 shares of reserved stock. But we think the master erred in his conclusion that the one-sixth of the $95,000 or $15,833.33⅓, was payable in stock. We think the clear and decided weight of the testimony on both sides is, that this sum was payable in cash. The master sets out in a material error by giving to the answer of the defendants less than its due weight; overturning it by the unsupported testimony of a witness whose attitude in the cause entitles him to no greater weight than the testimony of any one of the defendants. The defendants in their answer deny expressly and responsively to the bill, that they were to pay the one-third or the one-sixth of the $95,000 in *stock*.

The testimony of Mr. Newbold was not entitled, under the circumstances in evidence, to the great weight given to it by the master. Supposing him to be legally competent to testify, yet he had evidently a strong bias of feeling and of interest of a personal kind. He was one with Brooke & Barrington in the enterprise, and was to receive one-third of its profits. He assigned his interest, it is true, in absolute payment, he says, of his debts; but the assignment was to his brother-in-law, and for a sum small in comparison with that found by the master on his testimony, having a surplus to return to himself, or to fill the pocket of his near relative. One or the other would gain largely by his testimony. His testimony is also seriously contradicted, not only by the two Phillipses, but by Brooke and himself. In his first examination on the 4th of June 1867, referring to the final or modified agreement, he testified that Isaac N. Phillips, Brooke and he, had a conference together in Brooke & Barrington's office, and that Phillips said to Brooke, "as you have only got $100,000, instead of

[Phillips's Appeal.]

$200,000 of the subscriptions, I propose to reduce your compensation to one-sixth of the $95,000, and one-third of the 5000 reserved shares." This he gave as a quotation of the language of Phillips, and as a proposition made in a personal interview at which he was present. But Brooke's account is, that two of the Phillipses, Isaac and Thomas, came to his office-door and called him *into the hall*, and *there* stated to *him* that he had not raised the $200,000 to pay Dr. Egbert, and that unless he and Barrington would consent to modify the agreement, to wit, to receive one-sixth of $95,000, which was the stock profit, and one-third of the 5000 reserved shares, the company could not go through, and they would go up into the country and endeavor to raise it themselves. He says then that *he* went into the back office with the Messrs. Phillips and repeated the conversation they had had in the hall to Newbold in their presence. This is essentially a different version from that given by Newbold. Two years and a half afterwards, on the 7th of December 1869, and after Brooke had testified as just stated, Newbold was recalled, and then said he was sitting in Brooke & Barrington's office, when Isaac Phillips came in. " He called Mr. Brooke out *into the hall*, as *he* has stated, and he and Mr. Brooke returned into the office and they stated to me the proposition which Mr. Phillips had made to Brooke *in the entry*." Then, as if to give color to his former statement, he says : " As I have stated before, Mr. Phillips said, You have only got one-third of the amount required subscribed, and I want to reduce your compensation. I will give you one-sixth of the profits of $95,000 in stock at subscription price, and one-third of the 5000 bonus shares in lieu of the former agreement." But even with this attempt at reconciliation there is a manifest diversity in the statements of himself and Brooke. The two Phillipses also directly contradict Newbold's statement, and agree with Brooke's in all except the mode of payment, which they assert was to be *cash* and not stock. This is the very point of the contest, whether the payment of the $15,833.33⅓ was to be in cash or stock, and in regard to it, we think the weight of the evidence is clearly with the defendants. After the general statement of Mr. Brooke, above given, he was asked to answer this question : " Please state as near as you can recollect the words used by Isaac N. Phillips, in proposing the modified agreement as testified to by you." He answered : " As near as I can remember, one-sixth of the $95,000 stock profit, and one-third of 5000 reserved stock. . He put it in figures, $15,833.33⅓ in dollars, to represent the proportionate amount of the stock interest at subscription rates ; *he did not use these words to me*, but I *never gave my assent* to receive money in lieu of stock at subscription rate." Thus Brooke himself yields substantially the precise form of the contract proved by Newbold, and that

which is now sought to be established.   He admits that Phillips
did not use the precise language he must prove to make the sum
payable in stock, but that Phillips put it in dollars, and seeks to
avoid the consequence by averring that he did not consent to
receive money in lieu of stock.   But his consent is immaterial—for
the clearly proved fact in the case, and the finding also of the
master, is, that Brooke & Barrington had failed to accomplish the
subscription under the first agreement and cannot enforce it.   He
has nothing, therefore, but the modified agreement to resort to,
and that he must take as Phillips proposed or obtain nothing.   He
was the only witness on his side to the proposition made in the
hall, and Newbold's testimony, contradictory as it is, is but second
hand.   There is nothing, indeed, in their testimony which ought
to overturn the answer.   But we have, in support of the answer,
not only the positive testimony of Isaac and Thomas Phillips, who
made the modified agreement, but the testimony of two others
corroborating them.   The Phillipses state distinctly and positively
that the payment of the $15,833.33⅓ was to be cash and not in
stock.   Their testimony was taken after the law had gone into
effect making them competent as witnesses, the court having made
an order to open and remand the first report of the master, and
to take the testimony of all the parties.   The two Richardsons,
who at one stage of the business had an admitted interest in it,
prove the clear and distinct admissions of Brooke & Barrington,
that the payment was to be in cash and not stock.   They had a
deep interest in knowing the truth of the case, and the only way
the master disposes of their testimony, is by attributing to the
Richardsons a want of frankness—a willingness to sustain their
pecuniary interest at the expense of their candor and truth.   But
the Richardsons are strongly fortified by circumstances.   They
had left Philadelphia for home before the rupture between Brooke
& Barrington and the defendants had taken place, their bill being
filed against all the parties on the 29th of March 1864, just twenty
days after the modified contract had been concluded.   The com-
mittee, in the mean time, proceeded to Venango county to examine
the land and assist Phillips in making the payment.   The report
of that committee was made to the subscribers on the 28th of
March 1864.   The paper referred to by Newbold and Brooke,
which was presented by Isaac N. Phillips for signature, they say,
was not presented until after the return of the committee, and no
controversy began then, but it took place only at the second inter-
view in reference to this paper.   The bill of the Richardsons was
filed on the 29th of the month, and under these circumstances
expressly charges that "said Brooke & Barrington, so as afore-
said agreed to receive instead of half of all said profits, the sum
of $15,833.33⅓ in *cash*, and 1666⅔ shares of stock of said com-

[Phillips's Appeal.]

pany, to be delivered by the said Phillips." Now here is an assertion made by the Richardsons against their own interest, if stock was then more desirable than cash, and still more to the purpose, it was *ante litem motam*, as to the present controversy, and therefore not likely to be fabricated. Following the bill the defendants filed their answer, in which they admit the agreement as thus averred by the Richardsons. This contract with the plaintiffs the defendants have never denied, but always professed to be willing to fulfil, even as shown by the testimony of the plaintiffs. Indeed, they offered to the plaintiffs and the Richardsons, to deposit the money and stock if they would accept it, in the hands of any one they would agree upon to abide the result of the controversy between themselves. They offered to Brooke also, to pay the amount over to him, if the plaintiffs would indemnify them against the Richardsons. The plaintiffs have never agreed to accept performance of the modified contract as thus shown to be, their demand being for *stock* instead of cash; insisting upon a term in the contract, which the evidence clearly shows did not exist. Besides, an action was brought in the names of the plaintiffs and the Richardsons against the defendants in Lawrence county on the 10th of October 1864, to recover the cash and stock under the modified contract, as understood by the defendants. It is true, that the plaintiffs and the Richardsons litigated as to the right of the latter to use the names of the former in the action. But this did not make the action less potent as a barrier to the defendants' performance. They could not know whether the action was rightfully brought or not in the names of the plaintiffs. That was not their controversy. They could only await the result of the battle between the claimants, a contest which actually resulted in the defeat of these plaintiffs by the verdict of a jury. There is therefore no ground on which to rest the finding that the defendants ever declined to perform the modified agreement as they admit it to be, and as the proof is. This being the case, it is evident that the plaintiffs are not entitled to hold the defendants to the highest price the stock has since attained. The decision in the case of The Montgomery Bank *v.* Reese, and in Musgrave *v.* Berkendorff, applies only to a refusal to perform the contract, whereby the plaintiff suffers the loss in the advance of the price of the stock refused to be conveyed or transferred by the defendants. The plaintiffs are therefore entitled to a decree for the payment only of the sum of $15,833.33⅓ with interest, and for the value of 1666⅔ shares of the stock at subscription price, together with the dividends received by the defendants thereupon, and interest on the dividends, as well as interest on the value of the stock since the last dividend was declared. We append a statement resulting in the sum for which a decree is now made.

*Statement of sum to be paid.*

| | |
|---|---:|
| One-sixth of $95,000, payable in cash, . . . . . | $15,833.33 |
| Interest thereon from date of incorporation till May 1st 1871, seven years fifteen days, . . . . . . . . | 6,689.55 |
| | $22,522.88 |
| 1666⅔ shares of stock at $6.66⅔, . . . . . . . | $11,111.11 |
| Total dividends received amounting to $11 per share at par, $10, | 18,333.33 |
| Interest on the dividends received, averaged from January 1st 1865 to May 1st 1871, . . . . . . . . . | 6,966.66 |
| Interest on $11,111.11, subscription value of 1666⅔ shares of stock since dividends ceased to be declared, . . . . | 3,555.55 |
| | $62,489.53 |

And now, May 8th 1871, the decree at Nisi Prius in this case is reversed and modified; and it is now ordered and decreed that the defendants, Isaac N. Phillips, Charles M. Phillips, Thomas W. Phillips, and John Phillips, do pay to the plaintiffs the sum of $62,489.53, and that the costs be paid by the parties in equal proportions. And it is further ordered that execution for the debt above decreed to be paid, do stay until the result of the action No. 20 of December Term 1864 in the Court of Common Pleas of Lawrence county, brought in the names of the plaintiffs and of John R. and Alexander Richardson against the said Phillipses, shall be determined, or until the said plaintiffs, Brooke & Barrington, shall give sufficient security, to be approved by this court, to indemnify the said defendants against the claim of the said Richardsons in the said action.