## APPEAL OF CAROLINE M. CUNNINGHAM.

[ESTATE OF J. BENNETT CUNNINGHAM.]

FROM THE DECREE OF THE ORPHANS' COURT OF WESTMORE-
LAND COUNTY.

Argued October 4, 1888—Decided October 22, 1888.

Between an executor of a will and the testator's widow and devisees there
exists a relation of trust and confidence, and where the executor, im-
mediately after the testator's death, has procured from the widow a
release of her interest in the estate, the burden is upon the beneficiaries
to prove the fairness and good faith of the transaction, and that the re-
lease was executed by the widow with a full knowledge of the value of
the estate and of her interest in it, otherwise the release is invalid.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and
WILLIAMS, JJ.; CLARK and HAND, JJ., absent.

No. 92 October Term 1888, Sup. Ct.; court below, No. 47
February Term 1887, O. C.

On February 12, 1887, William Household, executor of the
will of J. Bennett Cunningham, deceased, filed his account
charging himself with personal estate of the deceased to the
amount of $16,372.98, and taking credit inter alia for $3,680,
"amount paid widow, consideration of quit-claim deed." To
this account, Mrs. Caroline M. Cunningham, widow of the de-
ceased, filed exceptions, when *Mr. Jacob Turney*, was appointed
auditor to hear and determine said exceptions.

The report of Mr. Turney, as auditor, filed on November 19,
1887, found the following facts:

J. B. Cunningham and Caroline Morgan were married in
1863 or 1864, and lived together for about two years there-
after, when Mrs. Cunningham voluntarily left her husband's
home and never after lived with him. On March 7, 1886, Mr.
Cunningham died, having left a will dated March 5, 1886,
which ignored Mrs. Cunningham in all of its provisions. The
will was admitted to probate on March 8, 1886, and the same
day letters testamentary issued to William Household, the
executor named in the will.

The said will had been written by Mr. E. F. Houseman, and when it was written the scrivener was directed by the testator "to tell the executor to go and settle with that woman as soon as possible, and for me to go along." On March 10, 1886, Mr. Household, the executor, went with Mr. Houseman to the residence of Mrs. Cunningham at Pennsville, where a meeting with her was had which resulted in her execution, in consideration of $3,680, of a quit-claim deed to William Houseman, the executor, "for the benefit of the other heirs of said decedent," releasing all her interest and claim in the real and personal estate of said deceased. This deed was on the same day duly acknowledged and filed for record. Of the consideration of said deed, the executor paid $30 in cash, and gave to Mrs. Cunningham his own note with Mr. Houseman, as surety, for $3,650. A few days after, the executor paid Mrs. Cunningham $50 additional as a credit on the note.

On April 2, 1886, the inventory of the personal estate was filed, amounting to $15,415.80. The appraisement of the real estate for the collateral inheritance tax, was filed about the same time, fixing the value of it at $10,320. The debts etc., were estimated at $2,582.08, reducing the personal estate by credits not including that taken for the payment to the widow, to $14,356.25.

On June 2, 1886, Mrs. Cunningham, through her attorneys, Messrs. Moorhead and Head, by a written notice tendered the note given her by the executor for $3,650, with the sum paid her in money, and demanded a return to her of her quit-claim deed, which was refused.

Upon the foregoing facts, substantially as found by the auditor, his conclusions of law were as follows:

\* \* \* \* \* \* \* \*

The real and controlling question in this case, is the effect that is proper to be given to the quit-claim deed executed and delivered by Caroline Cunningham to William Household, executor, "for the benefit of the other heirs," on the 10th of March, 1886.

By the terms of this deed, for the consideration of $3,680, the widow releases the estate of her husband of all dower and right of dower in the real estate, and also fully releases any claim

or right to any part of the personal estate, and agrees that the executor shall hold the real and personal estate subject to disposition and distribution in accordance with the directions contained in her husband's will. This paper is formally executed under seal and acknowledged, and same day delivered and recorded, and hereto annexed.

In the absence of anything to impeach it, on the face of the paper, it would be conclusive as to the widow's right to any further portion of her husband's estate, as it contains a full and complete surrender, for a valuable consideration, in specific terms, of her entire interest in the estate. But she seeks to repudiate and avoid its effect on the grounds of fraud and inadequate consideration; that she was not fully apprised of the value, nature and extent of her interest and rights in regard to her husband's estate, and that she was improperly induced to execute the release.

In this connection, and to correctly determine how far these charges have been sustained, it will be necessary to review the facts and circumstances that transpired in connection with the execution of the paper complained of.

On March 10, 1886, Mr. Household, the executor, in company with E. F. Houseman, went to the widow's house in Pennsville, Fayette county, Pa., when the executor informed her of the object of their visit, which he said was for the purpose of effecting a settlement with her for her interest in her husband's estate. She agreed to settle for a consideration. Mr. Houseman made known to her the material parts of her husband's will, and notified her that she got nothing by the will; that her name was not mentioned. He told her that she was entitled to one half of the personal property, and that it was his opinion that she had a life estate in one half of the real estate. The value of the estate was discussed; she valued it at $50,000; the executor said he did not think it would exceed $25,000. Houseman estimated it at from $22,000 to $25,000. Some data as to the value of the personal estate was considered, which did not include the property about the house. Household took the list, read it over to her and took the items down. Two items she did not want counted in, a bequest to J. E. Cunningham of $2,000, and a bequest of bank stock to Mary E. Hurst, and a small note of her husband's, amounting

### Auditor's Report.

to $1,600. Then the balance was divided, the one half being $3,680; then she said, "I will take that for my release," and I asked her if she meant the whole estate, she said: "Yes." Esquire Houseman then wrote the release, and he asked her if she understood the release, in case the estate was more valuable than we supposed. She said she understood that was all she was to get out of the personal and real estate both, no difference how much more valuable the estate might be. There was nothing said about how much more valuable the estate might be, no amount being mentioned. She said she knew she was not getting as much as the law would give a widow, and said she did not think she ought to have a widow's portion, the same as if they had lived together. She said that would be enough to keep her as long as she lived, and that was all she wanted. When the release was written, Mr. Houseman says, I read it over measurably and carefully, every word of it. Mr. Household said, that was as he understood it. She said it was right; that was the bargain. The release was executed and delivered; $30 in money was paid and a note for $3,650 given her. This is a brief summary of the evidence of Household and Houseman, who corroborate each other as to what transpired when the release was given.

Mrs. Cunningham, in her testimony, contradicts the testimony of Household and Houseman. She says they wanted a speedy settlement; spoke discouragingly about my prospects of getting anything; would law me. . . . . Told them I could not compromise; did not know what the estate was worth; too soon to talk about that; had no advice or counsel; farm leased for three years; could not be sold. Asked them what the personal property was worth; Houseman answered me emphatically, $9,000. I doubted that; I thought his estate was worth more than they said. When I agreed to take the half, they commenced cutting it down till they got it to $3,680. I had to accept the $3,680. I had no information except what Household and Houseman gave me that day. Had no knowledge of my husband's business; had been living separated fifteen or twenty years. I have no recollection of saying to Household, that if there would any other property turn up above the estimate made, that I would not claim any of it. If I had been properly informed of the amount of the estate I would have been satisfied with the

half.   What I asked for was the half, and I was treated fraudulently when I did not get the half.   No witness was called by the widow to testify as to what occurred when the release was executed, and to this extent she is uncorroborated.

The release in the case is sought to be rescinded on the ground of fraud and inadequacy of price.   Fraud must be established by proof " so clear as to leave no room for hesitation or doubt.   Relief in case of writings will not be granted when the evidence is loose, equivocal or contradictory; open to doubt or opposing presumptions:" Edmond's App., 59 Pa. 220; Lynch's App., 97 Pa. 349.

[Citing and considering upon the same subject, Campbell v. Patterson, 95 Pa. 447; Adams' Eq., § 79; Davidson v. Little, 22 Pa. 245; Light v. Light, 21 Pa. 407; Rankin v. Mortimere, 7 W. 372, the auditor proceeded:] The contract in this case was fully executed, signed, sealed, delivered and recorded, and as such is persuasive evidence of its integrity.   As to the amount of proof and for what causes a contract, so executed, can be successfully impeached, see Campbell v. Patterson, 95 Pa. 447; Phillips v. Meily, 106 Pa. 536; Spencer v. Colt, 89 Pa. 314; Lynch's App., 97 Pa. 349; Edmond's App., 59 Pa. 220; Yard v. Patton, 13 Pa. 282 and 283; Thudium v. Yost, 20 W. N. 217.

It is the opinion of the auditor, based on all the facts and circumstances of the case, that no fraud, undue advantage, or other improper means were used by the executor or others, to procure the execution of the release or quit-claim of March 10, 1886, by the widow; that the act was voluntary on her part, and should not be rescinded or disturbed, and that it was not error in accountant taking credit for the sum of $3,680, amount paid the widow, the consideration in the quit-claim deed, and the exception to the same is dismissed.

To this report Mrs. Cunningham filed exceptions, which were overruled by the auditor, and filed with the report.   On March 19, 1888, the court, HUNTER, P. J., after argument dismissed the exceptions and confirmed the report.   Thereupon the exceptant took this appeal and assigned, specifically, the dismissal of her exceptions and the confirmation of the report as error :

Arguments.

*Mr. Jas. S. Moorhead* (with him *Mr. John B. Head*), for the appellant:

1. By the act of March 29, 1832, P. L. 200, a widow is allowed twelve months within which to make her election to take under or against the will of her husband. And an election by matter in pais can only be determined by plain and unequivocal acts, under a full knowledge of all the circumstances and of the party's rights. If an election be made before the circumstances necessary to a judicious and discriminating choice are ascertained, a widow will not be bound: Anderson's App., 36 Pa. 476; Kreiser's App., 69 Pa. 194; Melizet's App., 17 Pa. 449; Elbert v. O'Neil, 102 Pa. 302. In the case last cited, the widow, shortly after the death of her husband had executed an agreement for the sale of land devised, but she afterwards elected to take under the intestate laws. The agreement was avoided and the election sustained.

2. The auditor misconceived the nature of the question when he required distinct, clear and emphatic proof of the existence of fraud, and laid the onus of proving it upon the widow. When the executor undertook the management of this estate, he assumed a confidential relation to all persons interested, and was bound to act with scrupulous fairness: Bispham's Eq., § 220 et seq. The receipt of a ward, in full of his share, given on his arrival at the age of 21 years, will not be permitted to stand in the way of a settlement in the Orphans' Court, even without evidence of fraud: Say v. Barnes, 4 S. & R. 112. And in all cases where the parties have a special or fiduciary relation, which affords the power and means to one to take undue advantage or exercise undue influence over another, a transaction between persons so situated, will be watched with extreme jealousy and solicitude, and if there be found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party; the burden of proof of fairness being upon the party setting up the transaction: Darlington's App., 86 Pa. 512; Bixler v. Kunkle, 17 S. & R. 298; Diller v. Brubaker, 52 Pa. 498; Eberts v. Eberts, 55 Pa. 110; Worrall's App., 110 Pa. 349; Springer's App., 111 Pa. 228; Story's Eq. J., §§ 218, 308-328.

*Mr. Paul H. Gaither* (with him *Mr. J. A. Marchand, Mr.*

*J. R. McAfee, Mr. D. S. Atkinson* and *Mr. Jno. M. Peoples*), for the appellees:

1. The testimony shows that different opinions were held by the widow and the executor at the time of the settlement, opinions honestly expressed; and the weight of the testimony is that the affairs of the estate were both fully and fairly discussed before the settlement. The widow expressed herself satisfied and said, "That was more than she ever expected to get; that she didn't think she ought to have a widow's share." The principal case relied upon by the exceptant, is Elbert v. O'Neil, 102 Pa. 302. That case, in which stress was put on the fact of the weak and nervous condition of the widow, shows no similarity with this.

2. This contract was executed. The authorities cited by the exceptant refer to unexecuted contracts. "A party who complains that he has been wronged and brings a bill on such grounds, must make out a clear case before he can expect a decree to cancel his own deed:" Davidson v. Little, 22 Pa. 251. To the same effect is Light v. Light, 21 Pa. 411; Bierer's App., 92 Pa. 265. In the light of these authorities, the exceptant's executed contract, releasing her estate in possession, can be rescinded only by proof which is clear, precise and indubitable, made out by two witnesses, or one with corroborative circumstances.

OPINION, MR. JUSTICE STERRETT:

The controlling question in this case is whether the release, executed by appellant at the instance of the executor three days after the decease of her husband, divested her of all interest in the real and personal estate of which he died seised.

It is conceded that the learned auditor's findings of specific facts, connected with the execution of the release in question, are in the main correct, but it is contended that he and the court below erred in the conclusion they drew from those findings; that, instead of holding the release was prima facie binding on appellant and debarred her from participating in the distribution unless she avoided its effect by proving that it was fraudulently procured, they should have held, in view of all the circumstances attending the execution of the release, that the burden was on the appellees to prove the fairness of

the transaction, that the release was not procured by fraud, concealment, or other improper means, and that it was executed by appellant with full knowledge of the character, extent, and value of the estate, real and personal, and her interest therein.

The rule above stated, as to the burden of proof, results from the relation of trust and confidence which the executor occupies to the widow and devisees, especially in connection with the following among other clearly established facts: The release was procured by the executor with unreasonable haste, within forty-eight hours after the funeral, and before either he or the widow, or any one interested in the estate, had or could have had such knowledge of its character, extent, or value as to enable them to act understandingly. The consideration for the release is less than fifty per centum of appellant's statutory interest in the personal estate as shown by the executor's account. In addition to that, her interest in the real estate, valued for collateral inheritance purposes at $10,320, is by no means an inconsiderable item. According to the general appraisement, made March 16, 1886, six days after the release was procured, testator's personal estate amounted to $15,415.80, at which sum it was also appraised for collateral inheritance tax purposes. As ascertained by the executor's account, the personal estate " is $16,372.98, which is reduced by debts, not including payment to the widow, to $14,356.25."

After appellant had ascertained the amount of the personal estate, as shown by the inventory, she offered to surrender the note of $3,650 and $50 in cash given her by the executor, and demanded from him a surrender of the quit claim deed and release, executed and delivered by her to him for the benefit of the devisees under the will. The latter, as might have been expected, resisted the surrender.

It is not pretended, of course, that the executor was ignorant of the widow's statutory interest in her husband's estate, and that she had a right to demand and receive the same from him, notwithstanding she was ignored by her husband in his will. It was far from being any part of his duty as executor to lend himself to the work of procuring from her, with such undue haste and for the benefit of the devisees, a release of that interest for very much less than he knew, or ought to have

known, it was worth. Other facts and circumstances, tending to show that appellant executed the release in ignorance of facts that were necessary to enable her to act understandingly, might be noticed, but those above referred to are quite sufficient.

Applying the rule of evidence above indicated, we are of opinion that the proof is insufficient to establish the validity of the release ; and hence the court below erred in holding that it was binding on appellant and precluded her from participating in the distribution of the fund in the hands of the executor.

Decree reversed, at the costs of appellees, and it is ordered that the fund in hands of the executor be distributed in accordance with the foregoing opinion.