## Guaracino Estate

512

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*James Francis Lawler* and *Ostroff, Lawler & Baker,* for exceptant.

*Walter I. Summerfield, Jr.* and *Harry Shapiro,* contra.

BOLGER, J., November 16, 1962.—These proceedings were initiated by Matthew, one of four children of decedent, who died March 23, 1953. He filed a petition for a citation in December, 1957, against Frank, another child, who is the administrator, to show cause why an account should not be filed. Mary D'Alessandro, another child, later joined as petitioner. Joseph, the fourth child, has not participated in the proceedings. An answer and reply were filed and a master was appointed by the court to take testimony, report his findings of fact and conclusions of law and make recommendations to the court.

The master, after taking 926 pages of testimony, and receiving numerous exhibits, filed his report favoring the petition and recommended that an account be

filed. He later supplemented the report by dismissing the exceptions.

Thereafter, the administrator, acting through his counsel, volunteered to account, provided that he would not be bound at the audit of the account by any finding of fact or conclusion of law of the master. Thereupon, the court entered a decree directing the accounting to be made. It is important to note that the court did not approve nor did it reject the master's report, and further no request was made for such action.

The account was audited by President Judge Klein, and Matthew and Mary, represented by new and different counsel, offered in evidence the master's record and report. Objection was made by the accountant and the court sustained the objection and ordered that the case be tried de novo. Permission was granted, however, for use of the notes of testimony for purposes of cross examination.

Decedent had operated a small sweat-shop business of coat-felling for clothing manufacturers which yielded a modest income for lots of hard work. She was its sole owner since 1951, when, upon the death of her husband, intestate, all of the children assigned their interests in it to her. The business had assets of a very nominal value, consisting of an old truck, some tables, chairs and needles. There was no good-will. All of the contracts for work given by the garment manufacturers were at their will and there was no continuing obligation to furnish the work. All of the children at one time or another had been employed in the business during their mother's lifetime. Joseph and Frank were steadily employed in it and after their mother's death, they continued to operate the business.

At the audit, Mary and Matthew contended that each was entitled to a one-fourth interest in the business and, therefore, to one-fourth of the net profits and that Frank had failed to account for $23,000 in

cash which he had received from their mother shortly before her death.

To silence these demands, the administrator produced formal releases signed by his brothers and his sister, wherein each acknowledged the receipt of $3,822 from him in full satisfaction of their respective shares and released him from any further claims or demands.

The auditing judge, inter alia, made the following findings of fact: (a) That the testimony of all the parties was unbelievable; (b) that the objectors failed to prove the existence of the alleged fund of $23,000, but if such a fund had existed, Mary by her fraudulent conduct is barred from receiving any portion of the alleged fund since she conspired with the administrator to deprive Matthew and Joseph from participating in distribution; (c) that the releases executed and delivered exonerating the administrator from any further accounting were made and delivered with the full knowledge of all of the facts and circumstances surrounding the administration of the estate; (d) that Mary and Matthew had orally agreed to turn the business over to Frank and to Joseph, and that the releases constituted an effective conveyance of the business interest which Joseph and Frank continued to operate for their own benefit; (e) that under the circumstances of the case, both Matthew and Mary are barred by laches from presenting their claims. Exceptions to the adjudication have been filed by Mary alone.

Masters are presently appointed under the authority of the Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 601, which is a re-enactment of a very old practice. The function of a master is very lucidly and authoritatively discussed in Phillips' Appeal, 68 Pa. 130, cited with approval in Estate of Martina R. Nixon, 104 Pa. Superior Ct. 506 (1931). In Phillips' Appeal, supra, Justice Agnew held that

the report of a master is neither a decision nor an infallible guide, but is a serviceable instrumentality to aid the court in performing its functions; and that properly speaking, no report is conclusive. Were it conclusive, he said, the judgment of an officer performing an ancillary service would be superior to that of the court. Master's findings and conclusions may be rejected by the appointing power: Thomas Appeal, 124 Pa. 640; Obici v. Third National Bank & Trust Company of Scranton, 381 Pa. 184.

The Supreme Court Orphans' Court Rules §8: R 7 (b), which appears in our local Rule 87, provides that the report of a master shall not be approved until a decree is entered adopting its recommendations. In this court of six judges, masters may be appointed— always for some ancillary purpose—either by one judge or by the court en banc. Here, the master was appointed by the latter and was responsible to it and not to any one judge.

The entire master's record and report, not having been approved by the court en banc, was incompetent and, therefore, valueless at the audit of the administrator's account, which was a distribution proceeding. It is likewise incompetent now. To attempt to circumscribe the auditing judge or trier of the facts, including the credibility of the witnesses, by insisting that the master's handling of these matters should influence or control the auditing judge, is preposterous. Even had the master's report been approved by the court en banc, the result would have no bearing upon the auditing judge's complete right to rule and of the accountant's right to demand that the audit be a de novo proceeding. Any other decision would have been clearly erroneous. The master's findings and conclusions were, therefore, properly rejected.

Since the auditing judge was responsible for passing upon the credibility of the witnesses, a particularly

vital part of this case, he obviously had to see and hear them to judge of their demeanor and, therefore, their testimony taken before the master was incompetent except for cross examination. The exclusion of the record must be sustained.

Trouble developed among the parties when, in December of 1957, Frank and Joseph refused to continue their practice of helping to support Matthew and Mary. Matthew then filed his petition seeking this accounting. The auditing judge's record reveals numerous charges and counter-charges of fraud and deceit to the extent that, as the auditing judge said, "The rogues fell out." To illustrate, it is clear that all of the beneficiaries endeavored to defraud the taxing authorities. Mary charges Frank, the administrator, with withholding $23,000 cash, but at the same time she admits agreeing with him that they would split this sum between them and say nothing about it to the others. Matthew admitted perjuring himself and in an attempt to exonerate himself from this charge, he endeavored to put the blame on his counsel. Frank, the administrator, freely admitted the debits in the account were wrong; that the sums stated in the release as paid to the beneficiaries were understated. For the auditing judge to ascertain the truth in this case was almost a superhuman task. The record supports his findings, after seeing and hearing the witnesses, that they are all unworthy of belief "telling enough half truths to support their case;" that Matthew and Mary are totally unworthy of belief; that the nearest "approximation" of the truth was Frank's testimony. Mary also practically admitted obtaining her share of the $23,000 from Frank and stated on the stand that she was seeking only a share in the business. Finally, Mary is properly characterized as coming into court with unclean hands, confessedly a party to a conspiracy to defraud her brothers of their

share of the alleged $23,000 fund. There is sufficient in the record to support these facts and inferences of the auditing judge, especially as to the credibility of the witnesses which was his province, and we, therefore, sustain these elements of the case: Collings Estate, 405 Pa. 280. We find no abuse of discretion involved: Jacobs Trust Estate, 320 Pa. 539. The auditing judge was under no compulsion to believe the exceptant even though her testimony was uncontradicted: Garrett Estate, 372 Pa. 438.

The auditing judge's ruling that the release executed by the parties on November 12, 1953, was valid practically disposes of the other claims made by the exceptant. One of the most important points in ruling upon the validity of this release is the initial question of who carried the burden of proof, the accountant or the exceptant? In Cunningham's Appeal, 122 Pa. 464, the burden was put upon the fiduciary to prove the fairness of the transaction; that the release was not procured by fraud or other improper means; that it was executed by the parties with full knowledge of the character, extent and value of the estate and of their interest therein. However, the facts there are not comparable to those here. The parties here executed what the auditing judge termed a "family agreement;" they were then all of full age and possessed at least a working knowledge of the business of A. Guaracino Sons, having worked in the business from time to time. Under these circumstances, we agree with the auditing judge's ruling that the burden of proof was upon the exceptant and her brother, Matthew, to show that this family agreement, which is favored by the law, should be set aside because of fraud or other wrongdoing, and that the proof thereof must be clear, precise and indubitable, citing, inter alia, Miller's Estate, 279 Pa. 30 (1924). Greenan v. Ernst, 12 D. & C. 2d 725, affirmed 393 Pa. 321, cited by exceptant, is inapposite except

for the principle that when the auditing judge's findings and conclusions are supported by adequate evidence and based upon inferences properly drawn, they will be sustained. The conclusion that the release constituted a family agreement is correct: Way Estate, 379 Pa. 421. The inference drawn from the facts, that the exceptant did not sustain the burden of proof, is amply supported by the testimony and is, therefore, sustained.

Respecting the exceptant's claim that the administrator has not accounted for $23,000 cash, the auditing judge utterly disbelieved her testimony and found that the fund never had any existence; that if it did exist, Mary was a party to a fraudulent conspiracy respecting it and, therefore, has no standing to complain, and further if the fund ever existed, Mary practically admitted receiving her full share of it. Relying upon the authorities elsewhere set forth in this opinion that Mary's credibility was solely for the hearing judge, that his findings of fact are tantamount to those of a jury, that we find nothing in the record constituting manifest error in the findings of the auditing judge and that there is ample testimony on the other hand to sustain his findings, the exceptions to this phase of the case must be dismissed. According to Mary's own testimony, her participation in the fraud, which she attributes to Frank, was directly related to the event itself and affected her equitable relations with him: Sager v. Mead, 171 Pa. 349. If, as she testified, she agreed to the arrangement, she cannot now attack it.

Any error there might have been in the refusal of the auditing judge to accept into evidence over objection the testimony of Angelo Manzi, uncle of the parties, taken before the master, he having died before the audit, was harmless error. Manzi testified before the master corroborating Mary respecting a conversation among Frank, the administrator, Mary and him-

self, in which he quoted the administrator as admitting the possession of the $23,000 cash. This testimony has to do with what the auditing judge has described as the alleged conspiracy between Mary and the administrator to defraud their two brothers and which, we have ruled heretofore, barred Mary from raising the issue. Manzi's testimony, therefore, could not have substantially affected the exceptant's rights nor could it have influenced the decision: Commonwealth v. Blose, 160 Pa. Superior Ct. 165.

In ruling upon the exceptant's claim to a share in the business of A. Guaracino Sons, the auditing judge found that the business was not of the grandiose size nor did it yield the handsome profits asserted by the claimants; that both Matthew and Mary had conveyed all of their right, title and interest in it to the accountant and to his brother, Joseph, who had spent practically all of their lives operating it. In so doing, he relied upon the testimony of Frank that Matthew and Mary had orally agreed that he and Joseph should have the business, upon the written releases executed by all of the parties on November 12, 1953. Since there is ample evidence in the record to support these findings of fact, which are tantamount to a verdict of the jury, we affirm them. Even though we might have decided them differently, we would still be obliged to affirm: Hunter's O. C. Commonplace Book (2d ed.), Vol. 4, pp. 392, 393; Jacobs' Trust Estate, supra; Stauffer Estate, 372 Pa. 537. The record reveals no manifest error or clear mistake in this finding: Hanna Estate, 383 Pa. 196.

Exceptant argues that the transfer of decedent's business to Frank, the administrator, and to Joseph was illegal because it was not effected formally and legally by compliance with section 546 of the Fiduciaries Act of April 18, 1949, P. L. 512, and other related sections of that Act. On the contrary, failure

of the administrator to comply with the provisions of the Act did not render the transaction void, but merely voidable: Hadesty v. Hadesty, 331 Pa. 81. We agree with the auditing judge that this legislation was solely for the protection of creditors or other parties in interest who never received notice of the transfer and are defrauded thereby. The auditing judge has found, with which finding we agree, that both Matthew and Mary, the exceptant, knew of the transfer when they executed the release, which release included, according to the auditing judge, and again we concur with him, all of their interest in the business. We add to this conclusion that the release constitutes a ratification by both Matthew and Mary of a transfer of the business and is a waiver of all legal procedures otherwise governing the transaction. Mary is, therefore, estopped from interposing any objection.

For these reasons, all of the exceptions are dismissed and the adjudication is confirmed absolutely.