# Schmeck, Appellant, v. Muhlenberg Township School District.

*School law—School directors—Treasurer—Secretary—Division of compensation among directors—Equity—Findings of fact.*
Where a practice has existed during a period of years in a school board by which the salaried offices of treasurer and secretary were held in rotation by all of the directors, and the incumbents of such offices regularly divided their compensation among all the directors, a taxpayer has a standing in equity to enjoin the directors from the continuance of such a practice.

Where in such a case the court below finds as a fact that the payments made by the two officers were purely voluntary, without any prearrangement or antecedent bargain or understanding among the parties, and such finding is based upon sufficient evidence, the appellate court will not reverse the finding, and decree an accounting in favor of the school district as to the funds distributed.

Argued November 9, 1914.  Appeal, No. 46, October T., 1914, by plaintiff, from decree of C. P. Berks Co., In Equity 1090, on bill in equity in case of Ammon Y. Schmeck v. The School District of Muhlenberg Township, Henry F. Kramer, E. D. Hahn, John Shipe, Allen E. Faust, Nelson L. Rothermel and Daniel D. Becker. Before RICE, P. J., ORLADY, HEAD and KEPHART, JJ. Reversed.

Bill in equity for an injunction.  Before ENDLICH, P. J.

The findings of fact by the court below are quoted in the opinion of the Superior Court.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*Cyrus G. Derr,* with him *C. H. Ruhl,* for appellant.— A contract among the school directors expressly agreeing verbally or in writing to fix the salaries of treasurer and secretary and to rotate the offices and divide the emoluments, is clearly illegal.

*Jeff Snyder,* of *Snyder & Zieber,* with him *William J. Rourke,* for appellees.—The uncontradicted, the undisputed and only evidence is that both the secretary and treasurer gave $10 to $15 to certain of their fellow-directors who had done work for the secretary and treasurer. It is hard to understand how a court of equity could be expected to decree that this money be paid to the School District of Muhlenberg Township.

OPINION BY RICE, P. J., July 21, 1915:

The plaintiff in this bill in equity is the owner of taxable real estate and a taxpayer in the defendant school district. The defendants are, and for a number of years have been, members of the board of school directors of the district, one being treasurer and another secretary. The disputed averments of the bill, so far as material in this appeal, are substantially as follows: that the defendants entered into an unlawful arrangement pursuant to which the treasurer and secretary divided their compensation, fixed by the board of directors, with the members of the board, who, under the law, are entitled to no compensation; that the plaintiff apprehends the defendants, unless restrained, will use their votes and power as members to renew and continue the said unlawful practice; that the school district and taxpayers are in danger of irreparable injury and are without adequate remedy at law. The bill prays that the defendants make full answer; that they be directed to pay into the treasury of the school district all moneys found to have been improperly received by them; that the defendants who are still members be restrained from repeating or continuing the said illegal practice; general relief.

The answer admits the fixing of the treasurer's and secretary's compensation, but avers that it was the same as it had been for many years; it denies that any arrangement, lawful or unlawful, was made whereby the compensation of these officers, or either of them, was divided with the remaining directors; it denies that it was divided; and it denies that the defendants will use their votes and power improperly, and that there is any danger of irreparable injury to the district or taxpayers. Replication having been filed, the case was tried in accordance with the rules of equity practice, and was regularly proceeded with to final decree dismissing the bill at the costs of the individual defendants. Thereupon the plaintiff took this appeal.

The learned trial judge rested his decision on the following findings of fact, and the case for consideration on this appeal cannot be presented better than by quoting them at length: "1. Nelson L. Rothermel, E. D. Hahn, Allen E. Faust, John Shipe, Henry F. Kramer, and Daniel D. Becker, defendants, were at the time of the filing of this bill school directors of Muhlenberg Township school district, Berks County, Rothermel having served in said office continuously for about five years, Hahn, Shipe, and Kramer for about thirteen years, Faust for about three years, and Becker for about seven years; and Kramer being the treasurer and Hahn the secretary of the board, so constituted by it in accordance with its custom of long standing to give those offices (to which a compensation is attached) to all of its members in rotation. 2. The compensation of the treasurer and secretary was fixed annually by the said directors, and for a considerable period had continued to be and in June, 1911, was, that of the treasurer two per cent. upon the moneys passing through his hands, amounting to about $127; and that of the secretary $100 per year; which compensations were regularly paid and allowed to the said officers by the said directors. 3. For a number of years prior to June, 1911, it had been the practice of the treasurer and secretary, upon the receipt of their compensation, to distribute, gratuitously, part of the same to the remaining members of the board, in amounts of $10.00 or $15.00 each, and about June, 1911, this was done as usual, the defendants Rothermel, Faust, and Becker receiving such sums from both treasurer and secretary, and Shipe and Hahn from the treasurer. 4. The distribution mentioned in the foregoing finding to the defendants named therein was made by the treasurer and secretary as a purely voluntary matter on their part, without any prearrangement or antecedent bargain or understanding among the parties looking towards it as something either expressly agreed upon or consciously contem-

plated by them; nor was the amount of either of the said officers' compensation fixed with reference to, or its fixing influenced by, any expectation of such distribution."

Two general questions are presented: first, should the money received from the secretary and treasurer by the other directors be accounted for and paid into the treasury of the school district; second, should continuance of the practice described in the findings be restrained?

First, in the absence of allegation in the bill, and proof that the compensation allowed and paid these officers was excessive, no trust attached to it, or any part of it, unless it was fixed and paid pursuant to the unlawful arrangement alleged in the bill. As this allegation of the bill was denied in the answer, whether the compensation was fixed and paid, and subsequently part of it came into the hands of the other directors pursuant to such prior unlawful arrangement, was a question partly of fact and partly of law. So far as the law is concerned, the question is free from doubt. "Public office is a public trust; the sanctity of public property is essential to its due administration; and necessarily implies a remedy for every diversion from legitimate use:" Allegheny County v. Grier, 179 Pa. 639. It is clear that a plan, scheme, arrangement, or agreement adopted or entered into by school directors—no matter how ingeniously devised, or how many or how intricate the processes it contemplates for its complete fulfillment—pursuant to which money is to be drawn out of the school treasury, under the guise of compensation to the secretary or treasurer, with the ultimate purpose in view of sharing it with the directors who appoint those officers, is unlawful; that the consummation of such plan, scheme, arrangement, or agreement is a diversion of the public funds to an unlawful use; and that a court of equity has full power to compel the recipients to account for and return it to the school treasury. "It is also clear that a promise to a particular effect may be

implied in any given case, from the circumstances of the parties having invariably, on former and similar occasions, adopted any particular terms or course of dealing": 1 Chitty on Contracts, p. 84. As counsel for appellant well say, much the largest part of the business transactions of men have their terms fixed by implication. Men do not ordinarily put an unlawful arrangement for diverting public funds, like that alleged in the bill, in writing, or even in spoken words that can be proved. Granting to these defendants the possession of ordinary intelligence, and judging of the purpose of their action by its results, the inference is very strong that the money was paid to them pursuant to such arrangement as is alleged in the bill. It must be conceded, however, that this is not an irrebuttable conclusion of law, but is an inference of fact which may be overthrown by positive and direct testimony which the tribunal having jurisdiction to find the facts believes. In many respects the findings of fact of a judge sitting as a chancellor, under the present equity rules, are to be viewed, on appeal, as the verdict of a jury is; but there is this difference, that it is much easier to detect error, if there be error, in the conclusions where the processes by which they are reached are set forth, as they are in a judge's findings, than in a general verdict. As was pointed out in Phillip's App., 68 Pa. 130, the same weight was not attached to a master's finding of fact, where it was a mere deduction from other facts reported by him and was simply the result of reasoning, as where the determination of the question of fact depended on the credibility of the witnesses. The same distinction should be observed when speaking of the review of a judge's findings of fact in a case tried before him under the equity rules. But in general, and particularly in cases where the correctness of the findings depends on the view to be taken of the direct testimony of witnesses, it has been held uniformly that they will not be disturbed except for error which clearly appears,

and that an apparent preponderance of testimony against them is not sufficient to lead to a reversal, if there is testimony which, if believed, will warrant them. See Canavan v. Paye, 34 Pa. Superior Ct. 91, and cases there cited. In Byers v. Byers, 208 Pa. 23, Mr. Justice MESTREZAT said: "To justify us in reversing the findings of a chancellor on a question of fact, as we have often said, clear and plain error must be pointed out. It is not sufficient that our conclusions would be different on the testimony brought up on the record." This was quoted with approval in the later case of Strause v. Berger, 220 Pa. 367. This rule does not permit a perfunctory consideration of the evidence relative to facts in dispute, and is in entire harmony with the doctrine enunciated by Justice TRUNKEY in Worrall's App., 110 Pa. 349; but it does attach great weight, and properly so, to the superior opportunity which the trial judge has to judge of the credibility of the witnesses. In view of the practice extending over a period of years, it is difficult to believe that the distribution mentioned in the third and fourth findings was made by the treasurer and secretary as a purely voluntary matter on their part, without any prearrangement or antecedent bargain or understanding among the parties looking towards it as something either expressly agreed upon or consciously contemplated by them, and that the fixing of the compensation was not influenced by any expectation of such distribution. But we cannot say that this was impossible, or that the court's finding to this effect was not warranted by the defendants' testimony, if believed, or that the court committed manifest error in crediting that testimony. Therefore, having regard to the general rule relative to the review, on appeal, of the judge's findings of fact, the assignment of error to the fourth finding is not sustained. It follows that the assignments of error to the court's conclusions of law, so far as they relate to the prayer for accounting, must be overruled.

This brings us to the second question above stated. It will be observed that the matter complained of is not a single act, but a practice of long standing, in which were conjoined, as parts of a connected whole, two elements: (1) the giving of the two offices to which compensation was attached to all the members of the board in rotation; (2) the voluntary distribution by the incumbent of each office of part of the compensation among the other members of the board. In determining as to the propriety of enjoining the defendants from repeating or continuing this practice, the question is not whether a crime was committed for which an indictment would lie, or whether the school district was actually defrauded, but whether such practice is "contrary to law and prejudicial to the interests of the community." No doubt can be entertained as to that question, when it is considered that each director took the oath prescribed by statute to support the laws of the Commonwealth and to discharge the duties of his office faithfully and impartially and to the best of his understanding and ability; that amongst such duties are the choosing of a secretary and treasurer and the fixing of their compensation; that the statute expressly declares no school director shall receive any pay or emolument whatever for his services as such. Manifestly a practice whereby rotating these offices of secretary and treasurer among the different members of the board is the controlling principle, tends to make of less importance the considerations that ought to control, namely, fitness and efficiency. But whatever may be said in defense or palliation of a practice of rotating these offices, nothing can be said in its defense where there is included, as an integral part of it, the division of the compensation among all the members of the board. Public policy requires that all public officers having the power to appoint other public officers, should act in regard to such appointments solely from the standpoint of the public interest, and all contracts for payment to offi-

cers, in consideration of their appointment of particular persons, are held illegal as a temptation to them to appoint improper persons; equally against public policy and illegal are contracts with the appointing power by which an applicant for office agrees to give up part of the emoluments of his office in consideration of his appointment: 15 Am. & Eng. Enc. of Law, 968. For the same reasons, as well as because of the facility it gives for fraud and for accomplishing by indirection what the legislature has forbidden to be done directly, such practice as was pursued by these defendants must be condemned as illegal and prejudicial to the interests of the public. Many practices are forbidden to private trustees by general rule which proceeds, not on the ground of fraud, but because of public policy. "No fraud may exist in fact; no fraud is presumed in law; but public propriety would be outraged if such acts were permitted, and hence their prohibition": Bispham's Eq., 7th Ed., sec. 94. The same principles are applicable to many practices of public officials, and undoubtedly apply to such a practice as that which is shown here. A case for injunction was presented if there was reasonable ground for apprehending that the illegal practice would be continued if not restrained. Considering the length of time during which the practice had been pursued, and the fact that there is no intention declared in the answer or in the testimony to discontinue it, we conclude that the injunction should issue. Perhaps the imposition of the costs upon the defendants may have a deterrent effect; but there is no legal certainty that it will have the same effect as the interposition of the power of a court of equity to restrain the unlawful practice.

The decree is reversed, and an injunction is awarded as prayed for in the bill to restrain the remaining directors from repeating or continuing the practice mentioned in the learned judge's third finding of fact. It is further ordered that the costs in the court below and here be paid by the individual defendants.