## In re Lower Heidelberg Township School District

*Charles H. Werner* and *Samuel E. Bertolet*, for petitioners.

*John B. Stevens* and *Paul D. Edelman*, for respondents.

SCHAEFFER, P. J., September 23, 1933.—

### Findings of fact

1. Charles K. Staudt, Webster Essig, and Walter E. Sheidy are and have been members of the Board of School Directors of Lower Heidelberg Township School

District. The term of office of the said Staudt and Sheidy expires on the first Monday of December 1933, and the term of office of the said Essig expires on the first Monday of December 1935.

2. The other members of said board of school directors during the years 1930 and 1931 were George B. Lamm and Adam D. Greth, whose terms of office expired on the first Monday of December 1931.

3. At a meeting of said board of school directors held on February 7, 1931, it was resolved to increase the bonded indebtedness of said school district in the sum of $50,000, for the purpose of providing funds for the erection, equipment, and furnishing of a new school building. Said proposal to increase the bonded indebtedness having been approved at a public election held on March 17, 1931, the school board, in April 1931, awarded contracts for the erection of said new school building upon a tract of land authorized to be purchased at a meeting of said school board held on March 26, 1931.

4. The resolution of said school board which authorized the incurring of a debt in said sum of $30,000 and directed the issuing of the bonds contained a covenant on the part of the school district that for each of the years 1931 to 1935, inclusive, the sum of $1,000 should be appropriated from taxes for the redemption of said bonds, in addition to interest and taxes thereon.

5. On May 22, 1930, George B. Lamm was elected treasurer to serve for one year beginning the first Monday in July 1930.

6. Upon the expiration of the term of George B. Lamm as treasurer of said school district, Webster Essig was duly elected as his successor; but said George B. Lamm was continued as treasurer of the special building fund of said school district until July 20, 1931, when he paid to Webster Essig as treasurer of the school district the balance in the special building fund as found by the auditors.

7. As special building fund treasurer, George B. Lamm was paid a commission of $1,136.26, being 2 percent of the amount of money paid by the school district for the construction, equipment, and furnishing of the new school building.

8. Out of the commission received by Lamm as treasurer of the special building fund, he paid about $200 to each of the other members of said school board, to wit, to Messrs. Staudt, Essig, Sheidy, and Greth.

9. About the first week in April 1931, the school board entered into an agreement in writing for the purchase of a tract of land (upon which the new school building has since been erected) and delivered to the owners of the land a check for $300, dated May 1931, which check was returned to the school board when the latter on April 29, 1931, paid to said grantors the full consideration.

10. The school board let certain contracts in connection with the erection of the new building after the agreement had been made for the purchase of the land upon which the building was to be erected, but before the deed to said land had been delivered.

11. During the years 1931 and 1932, said school board failed to set aside any money for the purpose of paying the principal of the bonded indebtedness created in 1931; on May 8, 1933, the board for the first time established a sinking fund for that purpose and deposited the sum of $100 therein.

## Discussion

George B. Lamm was the regularly elected treasurer of the school district for the term of 1 year beginning the first Monday in July 1930. As such, he received the proceeds of the sale of the bonds by the district in 1931. Upon the expiration of his term, after his successor, Walter Essig, had been elected and had qualified, Lamm was continued by the board as treasurer of the special

building fund. As explained by the witnesses, this was done to save the premium upon a new surety bond and because the work for the payment of which the special fund was created had almost been completed. We have no doubt that the board acted in perfectly good faith in establishing this arrangement. But it is nevertheless true that in so doing the board acted without lawful authority. The School Code of May 18, 1911, P. L. 309, sec. 303, as last amended by the Act of May 29, 1931, P. L. 243, sec. 6, 24 PS § 214, provides that in each district of the fourth class the school directors shall elect, from their members, a president, a vice president, a treasurer, and a secretary. Section 326 of the code, as amended by the Act of June 1, 1933, P. L. 1152, sec. 18, requires the person elected treasurer to furnish a proper bond; section 327 requires the school treasurer to settle his accounts annually; section 328 requires the treasurer to pay over promptly to his successor in office the balance of any and all money remaining in his hands and to deliver to him all books, accounts, and other property of the district. Only one treasurer is provided for. Upon the election and qualification of Essig, it became the duty of Lamm to deliver to him, on the first Monday of July 1931, all moneys, general and special, as well as all books and accounts of the district.

There is no dispute about the fact that Lamm shared with his fellow-directors the commission accruing to him as treasurer through receiving and handling the special building fund. He kept for himself something over a fifth of the total commission and distributed the balance amongst the others. Again, there is an absence of testimony indicative of corrupt purpose or intent. We cannot say that any director was influenced in any of his official acts by the receipt of that money. Lamm frankly states that he did not believe it was right that he should keep the entire commission; the amount of the commission, fixed by the law, was larger than he believed his work and responsibility as treasurer entitled him to accept. So he shared it with the other directors, because they were required to attend meetings of the board and because they, or one of them, helped him with his accounts. But all this was grossly improper. Upon assuming office each director took the statutory oath by which he swore that he would "not knowingly receive, either directly or indirectly, any money or other valuable thing for the performance or non-performance of any act or duty pertaining to . . . [his] office, other than the compensation allowed by law." And section 224 of the School Code provides that school directors shall serve without pay "except as hereinafter provided". There is no provision for the pay of directors of districts of the fourth class as such.

In Schmeck v. Muhlenberg Township School Dist., 60 Pa. Superior Ct. 183, where the gratuitous distribution of part of the compensation of the treasurer and secretary of the board was in question, the court said (p. 191) : "For the same reasons [of public policy], as well as because of the facility it gives for fraud and for accomplishing by indirection what the legislature has forbidden to be done directly, such practice as was pursued by these defendants must be condemned as illegal and prejudicial to the interests of the public." And in In re Duryea School Directors, 25 Luz. L. R. Rep. 267, and in Springfield Township School Directors, 19 D. & C. 176, such distribution of the lawful compensation of a treasurer of a school board among other members of the board was held, in itself, to require the removal of the parties from office. Our public policy cannot sanction a payment to school directors of funds emanating from the school treasury unless such payment is clearly provided for by statute. Any other doctrine would open the way to corruption and fraud. Upon principle and authority, we are therefore constrained to direct the removal from office of those directors who have received part of Lamm's commission and are still in office.

If Lamm was of the opinion that the compensation allowed to him by law was in excess of what he rightfully earned as treasurer, his simple and patriotic course would have been to permit the excess to remain in the public treasury.

In awarding certain contracts looking towards the erection of the new building, before they had acquired legal title to the land upon which the work was to be done, the board acted indiscreetly and inadvisedly. See Coal Township School Directors, 290 Pa. 200.

The other matter to which reference should be made is the failure of the board to establish a sinking fund and to make deposits therein for the redemption of the bonds. It was their clear duty, under the resolution authorizing the increase of indebtedness, to appropriate the sum of $3,325 in each of the years 1931 and 1932 to the payment of interest, taxes, and principal of said loan; that is, the clear sum of $1,000 a year was covenanted to be deposited in a sinking fund towards the redemption of the bonds during the first 5 years. In fact, the board deposited only the sum of $100 in the sinking fund after the petition in this case was filed. Such failure to comply with the terms of their own agreement must injuriously affect the credit of the school district and cannot be approved.

*Conclusions of law*

1. The distribution of the treasurer's commission among the members of the school board was unlawful and prejudicial to the public interests.

2. The receipt of a share of the treasurer's commission by the other members of the school board constitutes just and sufficient ground for their removal from office.

3. The letting of contracts looking towards the erection of a new school building and calling for the payment of substantial sums of money before the school board had acquired title to the land upon which the building was to be erected constituted a dereliction of duty.

4. The failure on the part of the school board to set aside funds for the payment of the bonds in accordance with the resolution authorizing the increase of indebtedness constituted a dereliction of duty.

5. Charles K. Staudt, Webster Essig, and Walter E. Sheidy are herewith removed from the office of school director of Lower Heidelberg Township School District and are directed to pay the cost of these proceedings.

And now, to wit, September 23, 1933, in pursuance of the provisions of the Act of May 18, 1911, P. L. 309, sec. 217, 24 PS § 180, Charles K. Staudt, Webster Essig, and Walter E. Sheidy are herewith removed from the office of school director of the Lower Heidelberg School District and are directed to pay the costs of these proceedings; and Thomas E. Hans and Isaac Lebo, taxpayers and residents of said school district, are hereby appointed members of the Board of School Directors of Lower Heidelberg Township to serve for the unexpired terms of said Charles K. Staudt and Walter E. Sheidy, respectively, and John H. Mull, a resident and taxpayer of said school district, is hereby appointed a member of the Board of School Directors of Lower Heidelberg Township School District for the unexpired term of Webster Essig.

From Charles K. Derr, Reading, Pa.